The appellant was convicted of driving under the influence of alcohol in the municipal court of the City of Leeds and was fined $400 plus costs. She appealed her case to the Jefferson Circuit Court, where she was again found guilty and was fined $250 plus costs.
The record indicates that, on the night of the offense, the appellant was returning home from a wedding reception. She was stopped by a police officer for driving at a rate of 51 miles per hour in a 25-mile-per-hour zone. When asked for identification by the police officer, the appellant gave the officer a Louisiana driver's license, and the officer discovered that her Alabama license was suspended. She was then ticketed for the offense of driving while her license was suspended. Other officers arrived at the scene and the appellant was requested to perform a number of field sobriety tests, which she failed. She was then arrested for driving under the influence and was taken to the City jail. She refused both the breath and blood test for intoxication.
 I
The appellant argues that the city attorney was improperly allowed to present evidence of a separate unrelated offense, specifically that she was ticketed for driving while her license was suspended, which evidence unduly prejudiced her. However, the record indicates that this evidence was initially elicited at trial during the cross-examination of the arresting officer by defense counsel. On direct examination, the officer testified that the appellant had produced a Louisiana driver's license and that he had asked whether she resided in the state of Alabama and, if so, for how long. The officer testified that the appellant informed him that she had moved back to Alabama in 1987 and had "just failed to get her Alabama license." On cross-examination, defense counsel questioned the officer as follows:
 "Q. So she had a driver's license from Louisiana, didn't she?
"A. Yes, sir.
"Q. So you asked her about that, didn't you?
"A. Yes, sir.
 "Q. Of course, she told you, did she not, that they had come back here from Louisiana so her husband could go to school, didn't she?
"A. I'm uncertain of that fact, sir.
 "Q. Of course, you know that you don't lose residence somewhere just to come and go to school, do you? You know that from being in the Air Force, don't you?
 "A. As far as lose residence from what, the individual through school as a student?
"Q. Yes, sir.
 "A. A student maintains residency as long as he is in school.
"Q. And where are you from initially?
"A. From Alabama. *Page 1248 
 "Q. And you were from Alabama no matter where you were stationed, weren't you?
"A. Yes, sir. . . .
 "Q. You didn't have to get a driver's license everywhere you were, did you?
"A. Yes, sir, I did.
 "Q. You mean if you spend — well, how many different licenses did you get?
"A. Two."
Defense counsel had also elicited testimony from the officer that the appellant was stopped for speeding, but that she had not been given a ticket for speeding. Thereafter, during the direct examination of the appellant, defense counsel asked her if she had gotten a ticket for speeding. She responded that she had not. The testimony concerning the appellant's ticket for driving while her license was suspended was adduced by the prosecutor during the cross-examination of the appellant. Clearly the appellant had "opened the door" into this matter by the previous testimony. Bolden v. State, 568 So.2d 841
(Ala.Cr.App. 1989).
Moreover, the appellant's ticket for driving while her license was suspended was clearly part of the res gestae of the present offense. "Evidence of the accused's commission of another crime is admissible if such other crime is inseparably connected with or is a part of the res gestae of the now-charged crime. This rule is often expressed in terms of the other crime and the now-charged crime being parts of one continuous transaction or one continuous criminal occurrence." C. Gamble, McElroy's Alabama Evidence, § 69.01(3) and cases cited therein (4th ed. 1991).
 II
The appellant argues that the prosecutor improperly examined a police officer as if he were an expert witness, and the officer was improperly allowed to give his opinion as to the ultimate issue in the case. Specifically, the appellant argues that the prosecutor improperly asked the officer if he was familiar with "characteristics that are generally associated with being under the influence of alcohol." The appellant states that, by using this language, the prosecutor qualified the officer's opinion as that of an expert. Moreover, the appellant alleges that the officer's opinion that the appellant was under the influence of alcohol at the time she was stopped was in fact a statement concerning the ultimate issue in question.
However, the officer, who had special experience concerning persons driving under the influence, was possibly able to form a more reliable opinion than could be formed by a layman, as to whether the appellant was under the influence.
 "A survey of the cases . . . would justify a belief that a subject need not be completely beyond the ken of the average layman to justify the admittance of an expert's opinion on the subject. It may well be more accurate to say that a witness having special experience which enables him to form a more reliable opinion from specified data than could be formed by the average layman, may testify to his opinion even though the jury would be regarded as qualified to form an opinion from the data. . . ."
C. Gamble, McElroy's Alabama Evidence, § 127.01(5)(c) (4th ed. 1991).
Moreover, the officer's statement that in his opinion the appellant was under the influence of alcohol at the time she was stopped was not an improper statement on an ultimate issue in the case.
 "[T]here appears to be a modern trend in the direction of permitting experts to give their opinions upon ultimate issues whose final determination rests with the jury. The basic theory underlying the decisions forming this trend is that the expert should be allowed to give his opinion upon an ultimate issue if that will aid the jury in its decision. The Alabama courts have adopted language to the effect that because a question propounded to an expert witness will elicit an opinion from him in practical affirmation or disaffirmation of a material issue in a case will not suffice to render the question improper."
C. Gamble, McElroy's Alabama Evidence § 127.01(5)(d) (4th ed. 1991). "[A] police *Page 1249 
officer is allowed to give his opinion as to the sobriety vel non of the appellant." Grimes v. State, 488 So.2d 8, 9
(Ala.Cr.App. 1986), and cases cited therein. See also Sandersv. City of Birmingham, 542 So.2d 325, 330 (Ala.Cr.App. 1988).
The officer's testimony, based on his experience, could clearly aid the jury in making its determination. Moreover, his testimony did not invade the province of the jury as testimony on the ultimate issue in this case.
 III
The appellant argues that the trial court erred in deciding to give one of the appellant's proposed instructions, but then not giving the instruction as it was written. Specifically, the proposed charge stated as follows: "I charge you that it is not illegal in the State of Alabama to drink alcohol and drive an automobile. In other words, you must have consumed enough alcohol and then either driven or been in actual physical control of an automobile to actually be under the influence of alcohol." The charge given by the trial court was as follows:
 "Now, keeping in mind the charges I gave you earlier regarding the elements of the offense of driving under the influence, I also charge you in addition to that, that it is not illegal in the State of Alabama to drink alcohol and drive an automobile. In other words, you must have consumed enough alcohol — being either driven or in actually physical control of an automobile after having drunk enough alcohol to actually be under the influence of alcohol."
The appellant argues that by not giving the charge to the jury exactly as it was written the trial court may have misled them. The appellant alleges that the wording used by the court "made it sound as though a person could break the law even by being a passenger in a car, while under the influence of alcohol." Thus, the appellant argues, the trial court violated § 12-16-13, Code of Alabama 1975, in that her requested charge was a correct statement of the law and therefore should have been given. However, case law has made it clear that this statute is to be followed "substantially at least," Guice v.State, 380 So.2d 404, 405 (Ala.Cr.App. 1980), or "substantially complied with." Powell v. State, 51 Ala. App. 398, 399,286 So.2d 73, 74, cert. denied, 291 Ala. 796, 286 So.2d 75 (1973).
 " '[E]very accused is entitled to have charges given, which would not be misleading, which correctly state the law of his case, and which are supported by any evidence, however weak, insufficient, or doubtful in credibility.'
 "Chavers v. State, 361 So.2d [1106] at 1107 [(Ala. 1978)] (citation omitted). This entitlement, however, is not absolute.
 " 'The refusal of a requested written instruction, although a correct statement of the law, shall not be cause for reversal on appeal if it appears that the same rule of law was substantially and fairly given to the jury in the court's oral charge or in other charges given at the request of the parties.'
 "Rule 14, Ala.Temp.R.Crim.P. See, also, Ala. Code 1975, § 12-16-13; Lambeth v. State, 380 So.2d 923
(Ala. 1979); Cephus v. State, 539 So.2d 400
(Ala.Crim.App. 1988), cert. denied, February 3, 1989; and Lundy v. State, 539 So.2d 324
(Ala.Crim.App. 1988)."
Stephens v. State, 552 So.2d 162, 162-63 (Ala. 1989). InStephens v. State, the Alabama Supreme Court addressed the issue of "whether the trial court erred in failing to recite verbatim [the defendant's] requested jury charge." The Court reviewed the record and determined that the trial court's instructions fairly and substantially covered the requested instruction by the defendant. Id. See also Brooks v. State,462 So.2d 758, 759 (Ala.Cr.App. 1984); Lowery v. State,381 So.2d 659, 663 (Ala.Cr.App. 1980). In the present case, the trial court gave a complete and correct statement of the law as it applied to the appellant's case.
 IV
The appellant argues that the trial court erred in failing to give instructions on circumstantial *Page 1250 
evidence. She also argues that the trial court erred by giving the jury an instruction on reasonable doubt that indicated that the prosecutor's burden was not absolute, but refusing to give the appellant's requested instructions that stated that, if the jury did have a reasonable doubt, they must find her not guilty.
The appellant's objection concerning the trial court's failure to instruct on circumstantial evidence was as follows: "Secondly, we would ask that they be charged on circumstantial evidence as such." An objection to an oral charge must be specific and must clearly delineate the perceived defect.Davis v. State, 440 So.2d 1191 (Ala.Cr.App. 1983), cert. denied, 465 U.S. 1083, 104 S.Ct. 1452, 79 L.Ed.2d 770 (1984). An exception to a trial court's oral charge should set out the objectionable portion of the charge and not merely refer to a charge on a particular subject. Duncan v. State, 436 So.2d 883
(Ala.Cr.App. 1983), cert. denied, 464 U.S. 1047, 104 S.Ct. 720,79 L.Ed.2d 182 (1984). Although defense counsel pointed out a perceived deficiency in the court's oral instruction to the jury, Davenport v. City of Birmingham, 570 So.2d 1298
(Ala.Cr.App. 1990), the requested instruction was not specific enough to preserve for review any alleged error in the court's failure to give the instruction.
The record indicates that the trial court instructed the jury concerning the reasonable doubt standard as follows:
 "The City has the burden of proving the guilt of the defendant beyond a reasonable doubt. This burden remains on the City throughout the trial. The defendant is not required to prove her innocence.
". . . .
 "Now, ladies and gentlemen, the term, 'reasonable doubt,' means just what it says. It means a reasonable doubt, a doubt for which a good, sensible reason can be given. It does not mean a mere possible doubt, imaginary doubt or speculative doubt. On the other hand, when we say the burden is on the City to convince you from the evidence beyond a reasonable doubt of the guilt of the defendant, that doesn't mean that the City must convince you to a mathematical certainty. Because that could never be done when you depend on the testimony of other human beings. Reasonable doubt may arise from all the evidence in this case, a lack of evidence or any part of the evidence in this case."
The trial judge's instruction to the jury on the reasonable doubt standard was proper, and he instructed them that this standard must be met by the City in order to prove the appellant's guilt. Carter v. State, 340 So.2d 94 (Ala.Cr.App. 1976). Moreover, although the appellant's requested charges on reasonable doubt may have been correct statements of the law, because the trial court's oral charge to the jury sufficiently covered this matter, there was no error. Lambeth v. State,380 So.2d 923 (Ala. 1979); Dillard v. State, 371 So.2d 947 (Ala. 1979).
 V
The appellant argued that her motions for directed verdict and for a new trial were improperly denied, because the City's evidence was not sufficient to sustain a conviction. However, the fact that the appellant was driving an automobile is uncontested. The State also introduced evidence that the appellant behaved in a manner that was consistent with that of a person under the influence of alcohol. She failed her field sobriety tests and stated that she had consumed alcohol while at her friend's wedding reception. "The credibility of witnesses is for the trier of fact whose finding is conclusive on appeal." Hope v. State, 521 So.2d 1383, 1387 (Ala.Cr.App. 1988). The State presented evidence, which, if believed, was sufficient to sustain the appellant's conviction of driving under the influence. § 32-5A-191(a)(2), Code of Alabama 1975.
AFFIRMED.
All Judges concur. *Page 1251